J. O. CHEEK, et al. v. AMERICAN EAGLE FIRE INS. CO.

and

J. O. CHEEK, et al. v. ALLIANCE INS. CO. Consolidated Causes.

Middle Section.    January 28, 1928.

No petition for Certiorari was filed.

1. **Insurance.** Notice of cancellation given only to the person procuring the insurance is not notice to the insured.
    Where a party procured insurance for another and delivered it to him, held that thereafter notice of cancellation given to the party procuring

the insurance is not notice to the insured for the procuring party was the agent of the insurer.

2. **Evidence. Customs of trade must be so notorious as to raise presumption of knowledge before they are binding.**

Before a party can be bound by usages or customs of trade they must be imperative and compulsory in character and so notorious as to effect a person with knowledge of them and raise the presumption that he dealt with reference to them or he must be shown to have had actual knowledge of them.

3. **Insurance. Common-law rule that insurance agent was agent of insured changed by Act of 1907.**

The common-law rule that an insurance agent was the agent of insured was changed by the Act of 1907 and a person who solicits an application for insurance is now by statute the agent of the company, and not the agent of insured.

4. **Insurance. Evidence. Evidence held to show that insured was not notified of cancellation of policy.**

Where insured requested insurance of an agent, and he not being able to write the insurance in his own company applied to another company, having arranged with their agent to receive one-half of the commission and that company later cancelled the policy and notified the party securing it, but the premium was never returned to the insured and he was not notified, held that the policy was not cancelled and the company was liable for the loss.

Appeal from Chancery Court, Maury County; Hon. Thos. B. Lytle, Chancellor.

Affirmed.

Roberts & Roberts, of Nashville, for appellant, Alliance Insurance Company.

J. B. Daniel, of Nashville, for appellant, American Eagle Fire Insurance Company.

W. S. Fleming, of Columbia, for appellee.

DeWITT, J. These two suits, each brought against an insurance company by J. O. Cheek, F. M. Landers and B. C. Jennette, composing the firm of Fountain Creek Milling Company, for the use of J. H. Kannon and J. O. Cheek, were by consent consolidated and were heard together and decided by the Chancellor in favor of the complainants. The American Fire Insurance Company has appealed from the decree awarding a recovery to J. O. Cheek and J. H. Kannon of $1041, including interest, upon a policy of insurance against fire for $1000, dated September 22, 1925. The Alliance Insurance Company has appealed from the decree awarding a recovery to J. O. Cheek and J. H. Kannon of $1561.50, including interest, upon a policy of insurance against fire, dated September 22, 1925. One-third of each recovery was awarded to J. O. Cheek and the other two-thirds to J. H. Kannon.

Each policy purported to provide for insurance upon a building used as a mill belonging to complainants, with a provision of

payment of loss, if any, to J. H. Kannon as his interest may appear, subject nevertheless to all the conditions of the policy. The property was destroyed by fire on December 26, 1925 and proofs of loss were duly made and furnished to each company; whereupon each company refused to pay any amount under the policy. Fields & Jackson were the regular agents of each company at Columbia, with power to issue policies of insurance against fire on behalf of said companies. Henry T. Voss had for several years been engaged in business as a regular agent for other fire insurance companies in Maury county. He had been accustomed to placing the insurance for complainants on their mill property in his own or other companies, and keeping the custody of the policies for them. He had no financial interest in the business of complainants. When one of their policies would expire he would renew it in the same company, if possible, and if not, then he would place it with some other company that would accept the risk. He had never qualified, nor pretended to qualify, as a licensed fire insurance broker under the provisions of Shannon's Annotated Code, sections 3325-3341. When he could not procure insurance on complainants' property in a company represented by him, he would procure it from some other fire insurance company through its local, regular agent, and the agent's commissons would be divided equally between him and the agent of said company. This was done with reference to the policies sued on in this cause. Voss made an agreement with Fields & Jackson, agents of defendants, under which they issued these policies and delivered them to Voss, but he never delivered them to complainants. Complainants paid to him the premiums on said policies. He never paid over these premiums to Fields & Jackson or to the companies they represented. The policies were delivered by Fields & Jackson to Voss with the understanding that they constituted temporary risks until they should be advised by the companies whether or not they were willing for such insurance to continue in force and effect. Voss solicited of complainants the business of writing their fire insurance. Under his contract with Fields & Jackson he was entitled to one-half of the commissions on premiums paid by complainants on these policies. Fields & Jackson promptly reported to defendant companies that they had written these policies on this mill property, and about the first of October, 1925 each of said companies notified Fields & Jackson by wire and by letter that it must cancel the policies on account of the location and character of the property insured. Fields & Jackson thereupon notified Voss of the cancellation and he returned the policies to them, but did not return the premiums to the complainants. At the time of the burning of the property the policies were in the custody of the respective companies. Both defendants denied liability, on the ground that Voss was the agent of complainants and defendants were not bound by any of his conduct or transac-

tions; that the policies had been duly cancelled and the insurance was not in force at the time of the fire; that they had never accepted the risks, but on the contrary had promptly declined them; that as Voss was agent for the complainants, notice of cancellation to him should be imputed to them; and that complainants were bound by a uniform custom in Columbia and that section of the State of Tennessee of cancelling policies by giving notice to and taking up the policies from the agent or broker who procured the writing of the policies, and that it was never the custom or practice to hunt up and notify the insured in person.

The crux of these issues is therefore the status of Voss, whether he was the agent for complainants or for defendants; for his acts and transactions and his knowledge, or his neglect would bind that party for whom he was acting as agent.

The Chancellor, in a lucid opinion, held that Voss was the agent for defendants, the insurers, and therefore, although they undertook to repudiate the acts of Voss, Fields & Jackson in ever effecting any insurance, they are liable upon these policies. He also held that the provisions of the policies as to cancellation were not complied with and said policies were in full force and binding at the time of the fire.

As to cancellation, each policy contained the following provision:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation."

If Voss was the agent of complainants, the cancellation was effected; but if he was the agent of the insurers, it was not effected, for no notice of cancellation was actually conveyed to the insured, the complainants. In Grace v. American Central Insurance Company, 109 U. S., 278, 27 L. Ed., 932, this very question was involved, and it was held, under a similar provision in the policy, that notice of cancellation given only to the person procuring the insurance was not notice to the insured; that although the policy provided that the person procuring the insurance should be deemed to be the agent of the assured and not of the company, when the contract was consummated by the delivery of the policy he ceased to be the agent of the insured if his employment was solely to procure the insurance. In the same case it was also held that parol evidence of usage or custom among insurance men to give notice of cancellation to the person procuring the insurance was inadmissible to vary the terms of the contract. It is the general rule that an express, written contract, embodying in clear and positive terms the intention of parties, cannot be varied by evidence of custom or usage. City of Covington v. Kanawha Coal Co., 121 Ky., 688, 689, S. W., 1128, 123 Amer. St. Rep., 219, 12 Ann. Cas., 311, 3 L. R. A. N. S., 248; Northwestern Fire Insurance Co. v. Conn. Fire Insurance Co., 105 Minn., 490,

117 N. W., 827, 27 R. C. L., 170.  Furthermore, usages or customs of trade must be imperative and compulsory in character, and so notorious as to affect a person with knowledge of them and raise the presumption that he dealt with reference to them, or he must be shown to have had actual knowledge of them.  27 R. C. L., 154, 161. The evidence before us tending to show such custom does not contain these qualities.  It shows clearly that the complainants did not know of such a custom and did not deal with reference to it.  Therefore the issues cannot be decided on the basis of a usage or custom alleged to have prevailed.

Chapter 442 of the Acts of 1907, being section 3275a2 of Shannon's Annotated Code, provides as follows:

"Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof, be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers."

Prior to the enactment of this act, it was the law in this State that a broker who effects insurance, under no employment by the insurer, but for a commission upon the premium received for such risks as he procures to be offered and the insurer chooses to accept, is not the agent of the insurer in such sense that notice to him would bind the insurer.  Laundry Co. v. Insurance Co., 121 Tenn., 13, 113 S. W., 394.  In that case it was ruled that the authority of such insurance broker terminated upon the issuance of a policy of insurance which he was employed to procure.  But the aforesaid Act of 1907 changed the rule by defining the status of a person who solicits an application for insurance, as an agent of the company issuing the policy, and not the agent of the insured, in all matters relating, not only to such application, but also to the policy issued in consequence thereof.  The accepted definition of an insurance broker is that he is one who acts as middle man between the insured and the insurer; who solicits contracts from the public under no employment from any special company, but having secured an order places the insurance with the company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker.  9 C. J., 509.  Under such definition a broker was one who acted as agent for both parties in a transaction.  But the law of Tennessee, as set forth in said Act of 1907, declares a person procuring an application for insurance to be not a broker, acting for both parties, but an agent of the insurer.  In Maryland Casualty Co. v. McTyier, 150 Tenn., 691, 266 S. W., 767, the Act of 1907 was applied where the agent of the company writing the insurance had knowledge of a change of ownership of the property and therefore there was a waiver of change of

ownership of goods covered by a burglary policy by the company, by the act of its agent. Interpreting the meaning of said act, the court said:

"It will be observed that it is expressly provided that 'any person who shall solicit an application for insurance shall *in all matters* relating to such application *and the policy issued in consequence thereof,* be regarded as an agent of the company,' etc.; and having stated the proposition affirmatively, the act goes on to provide negatively that such person *shall not be the agent of the insured.* It is impossible to escape the effect of the words which we have italicized above. It was manifestly not the intention of the legislature to restrict the agency representation of the company to matters relating to application only, but to extend it to all matters relating to the policy issued."

In that case the insured did not deal directly with general agents of the company, but with brokers or special agents, who in turn dealt with the general agents, as in this case. Our interpretation of the Act of 1907 and of the opinion of the Supreme Court in said case compels us to hold that Voss was the agent of the insurers, the defendant companies, that payment of the premiums to him was a payment to the insurers; that notice of cancellation to him was not effective to terminate the contracts of insurance; that the complainants, being without knowledge of the attempted cancellation and having paid the premiums, had a right to rely upon the insurance being in force; that Fields & Jackson, the regular agents for the defendants, constituted Voss as a sub-agent, whose acts became binding upon the defendants, as he was not a licensed broker.

It results therefore that the decree of the Chancellor in these cause is affirmed. A decree will be entered in favor of the complainants in whose favor the decree was rendered by the Chancellor, in the proportions of one-third to J. O. Cheek, and two-thirds to J. H. Kannon, against each of the defendant Insurance Companies, and the sureties on its appeal bond for the amount awarded against it by the Chancellor, with interest from the date of the decree of the Chancellor, and one-half of the costs of the appeal.

Faw, P. J., and Crownover, J., concur.