# INDUSTRIAL LIFE & HEALTH INS. CO.
## v. TRINKLE—204 S. W. (2d) 827.

Eastern Section. July 9, 1947.

Petition for Certiorari denied by Supreme Court, October 4, 1947.

Guinn & Mitchell, of Johnson City, for plaintiff in error.

Stacy J. Grayson, of Bristol, for defendant in error.

HALE, J. This is a suit on a policy of insurance on the life of a new born infant, and is of the type commonly known as industrial, issued without medical examination. The defense is that the insured was not of sound health at the time the application was taken, or when the policy was delivered. There was a trial by jury, which resulted in a verdict for the beneficiary plus 25% penalty. When tested by motion for new trial, the verdict was approved and judgment entered. The insurer has perfected this appeal and assigns errors which may be summarized as presenting three propositions:

1st. There was no evidence to support a verdict (a) in that the insured was not in good health when the application was taken, or (b) when the policy was delivered.

2nd. There was error in the charge.

3rd. There was no authority for the allowance of a penalty.

■ The insured, Robert E. Trinkle, was born on October 13, 1946, to Junior Lee Trinkle and Ina Kate Trinkle, who were of little education and in necessitous circumstances. Either on the day following or on the next day there came to their residence J. A. Harmon and C. S. Peters, designated on the application as "Agents", who congratulated the parents and sought to sell them a policy on their baby. The baby weighed only five and a half pounds and was about six weeks premature. Both Mr. and Mrs. Trinkle testify that they informed these agents of the prematurity of the child. Mrs. Trinkle says she told them it was six weeks premature. Mr. Trinkle says the agents were told it was "a little" premature. Agent Peters denies knowing anything about the prematurity, saying he asked if the baby was in good health and normal, to which Mr. Trinkle gave an affirmative reply. Agent Harmon did not testify. The jury adopted the testimony of the plaintiff and we are bound by this finding.

The application was signed by the father and answers "yes" to the question, "Are you now in good health?" This application also asked, "Are you crippled or deformed in any way?" to which was answered "No". Altho there were blanks relating to various diseases and pregnancy of the insured, there was no query as to the normalcy of birth.

The Trinkles did not have 50 cents with which to pay the first week's premium, but it was agreed it would be advanced personally by Mr. Harmon, the agent, who paid it to the company. The application was sent to the Home Office in Atlanta, and a policy issued dated October 21, 1946. Among its conditions is this: "This policy shall constitute the entire contract. No person except the President, a Vice-President or Secretary has the power to modify, or in event of lapse, to reinstate this policy, or to extend the time of payment of a premium. Agents (which term includes managers and superintendents) are not authorized to make, alter or discharge contracts or waive forfeitures of any provisions or terms of this policy. This policy shall not take effect prior to the date of same, nor unless the first premium shall have been paid in cash, and the contract delivered and accepted during the lifetime and sound health of the insured."

There is a conflict in the evidence as to the time the policy was delivered to Mrs. Trinkle. She is positive it was the 21st—a manifest impossibility if the correct date of issue is one the policy. We think it was the following week, in that she testified the baby was in good health for two weeks after its birth, and that it was delivered when he was sick. If it was delivered on the 21st, as stated by her, it was at a time when the baby was in good health. If it was the following week—which we think it was—then it was delivered at a time when the baby was in the hospital, sick. But, regardless of the date of the delivery, Mrs. Trinkle then informed Agent Harmon that the baby was sick and in the hospital. This is not denied.

Therefore, as the record comes to us, it is established that when the application was signed Mrs. Trinkle divulged that the baby was prematurely born. It also shows that when the policy was delivered she told the soliciting agent that the baby was sick and in the hospital. We do not see how better faith could have been evidenced by her. There was no fraud; no concealment; no bad faith.

■ ■ Therefore, there is brought into play the well-known principle, viz., in the absence of fraud the insured has a right to assume that the agent will impart to his principal information which, if insisted upon, would invalidate the contract from its inception. Such knowledge constitutes waiver of conditions inconsistent with such facts and the insurer is estopped thereafter from asserting the breach of such condition. Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585.

But, as is said in 2 Am. Jur. at page 291: ''Moreover, as the rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing or to enable third persons to use the agent to further their own frauds upon the principal, it will not apply in favor of one acquainted with circumstances plainly indicating that the agent would not advise his principal, as where the agent is known to be acting adversely to the principal, or where the third person seeking to charge the principal is in collusion with the agent.''

This citation from American Jurisprudence was approved in DeFord v. National Life & Accident Ins. Co., 182 Tenn. 255, 185 S. W. (2d) 617, which is relied upon by plaintiff in error in the present case. However, that case presented the exception to the rule, showing that the insured was chargeable with knowledge that the

agent would not impart this information to his principal. The applicant in that case told the agent he had "bad blood" (i. e., syphillis), heart trouble, etc., to which the agent replied "he needed it (insurance) more than ever." For a later case involving the same question, see National Life & Accident Ins. Co. v. Atwood, Tenn. App., 194 S. W. (2d) 350, and cases cited.

■ It is said that the quoted provision of the policy prevented the defense of waiver or estoppel, and DeFord v. National Life & Accident Ins. Co., supra, is relied upon to sustain that contention. Altho the language used by Mr. Justice Chambliss in the DeFord case is very comprehensive, we do not believe it was intended to overrule the cases hereafter referred to by us.

The people who carry insurance policies—especially the holders of industrial insurance—never come in contact with the presidents, vice presidents or secretaries of insurance companies. If then a policy provision such as the one in question is to be rigidly sustained, it will do away with insured's reliance upon wavier and estoppel as a defense to forfeiture, and all insurance companies, regardless of the ethics or lack of ethics of their agents, will be given letters of marque to prey upon the unsuspecting, the gullible and the ignorant. We cannot believe that such was intended by the holding in the DeFord case.

■ Due to unethical and sometimes corrupt practices, it was necessary to enact legislation declaring the solicitor of insurance to be the agent of the insurer, and not the agent of the insured. Code, Sec. 6087, Pub. Acts 1907, Ch. 442.

As was said (Chambliss, J.) in Maryland Casualty Co. v. McTyier, 150 Tenn. 691, at page 695, 266 S. W. 767,

at page 768, 48 A. L. R. 1168: "It was manifestly not the intention of the Legislature to restrict the agency representation of the company to matters relating to the application only, but to extend it to all matters relating to the policy issued. It is apparent that the Legislature purposed affording to the insured a responsible connection with the insuring company, with which he was dealing, often times a nonresident corporate entity of uncertain address, with its identity, for purposes of legal notice, more or less obscure."

■■ There have been many cases which involved this statute and all have given it a most liberal construction in favor of the insured. Under it the insurer has been held responsible for the representations of the agent in respect to terms not covered by the provisions of the policy, to perhaps an unusual degree. American Life Ins. Co. of Alabama v. Hutcheson, 6 Cir., 109 F. (2d) 424. The knowledge of the agent under this section is the insurer's knowledge. American Nat. Ins. Co. v. McPhetridge, 28 Tenn. App. 145, 187 S. W. (2d) 640.

■ It is most certainly a matter of common knowledge that policies of insurance generally, if not uniformly, contain a provision against waiver of any of its terms. The wording is different, but the purpose the same.

■ In the McTyier case, 150 Tenn. 691, 266 S. W. 768, 48 A. L. R. 1168, supra, Mr. Justice Chambliss said: "It is said that *assent to the change in ownership could be given effectively by agents of the company in writing only, under the terms of the policy. The policy contract so provides, but it is well settled in this state,* in line with other jurisdictions, *that a written provision that the stipulations and conditions of the policy shall not be waived except by a certain officer may itself be waived by parol.*

Dale v. Continental Ins. Co., 95 Tenn. 38, 31 S. W. 266; [Aetna]Life Insurance Co. v. Fallow, 110 Tenn. 720, 77 S. W. 937,'' and other cases. (Emphasis supplied by us.)

And on pages 699, 700 of this case in 150 Tenn., on page 769 of 266 S. W., he cited a Wisconsin case affirming the leading case of Pollock v. German Fire Ins. Co., 127 Mich. 460, 86 N. W. 1017, in which it was said:

''But it is said that it was unreasonable to make the defendant responsible for the acts of Lawson, who was never authorized to act for it or bind it in any way. The answer to this objection is, the Legislature has assumed the right to regulate the business of insurance, and prescribe the manner in which it shall be conducted in this state. It has declared that whoever solicits insurance on behalf of an insurance company, or makes any contract of insurance, or in any manner aids or assists in making such contract, or transacts any business for the company, shall be held an agent of such company to all intents and purposes. The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. . . . It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf . . .''

''It is true that by applying the doctrine of wavier effect is given to parol assent despite the provision of the policy requiring written assent, and that the doctrine of

estoppel is thus involved; but it is not necessary, even under the practice in this state, that estoppel be pleaded eo nominee where the facts on which the estoppel rests are set out in the pleadings.'' 150 Tenn. pages 701, 702, 266 S. W. page 769, 48 A. L. R. 1168.

The Dale case, 95 Tenn. 38, 31 S. W. 266, supra, and the Fallow case, 110 Tenn. 720, 77 S. W. 937, 938, supra, sustain the holding that the provision against waiver except by certain officers may itself be waived. The Fallow case involved a policy which provided, ''No agent has authority to waive any condition of this policy, and no waiver will be recognized, unless in writing, signed by either the president, vice president, secretary, or assistant secretary of the company.'' The opinion was by Mr. Justice M. M. Neil, who with his usual thorough and painstaking manner collected and cited authorities from many jurisdictions concerning waiver and estoppel which are too numerous to be here cited. In disposing of the contention made under the quoted section of the policy, he said: ''As to the point raised under the ninth condition of the policy, that no agent had authority to waive any condition, and that no waiver could be recognized, unless in writing signed by either the president, vice president, secretary, or assistant secretary of the company, this has been heretofore so fully considered in the decisions of this court affirming the right of the agent to waive that we hardly deem it necessary to more than refer to them. American Cent. Ins. Co. v. McCrea, Maury & Co., 8 Lea 513, 520, 521, 524-526 [76 Tenn. 513, 520, 521, 524-526] [41 Am. Rep. 647]; Dale v. Continental Ins. Co., 95 Tenn. 38, 48-50, 31 S. W. 266.'' 110 Tenn. page 735, 77 S. W. page 941.

It is interesting to note that these cases (Fallow, and Dale) were all decided prior to the Act of 1907, Code, Sec. 6087, supra, which certainly greatly extends the liability of the insurer for the acts of its agents.

In Independent Order of Foresters v. Cunningham, 127 Tenn. 521, 156 S. W. 192, 5 A. L. R. 1559, Lansden, J., it was pointed out that forfeitures of life insurance policies are not favored and will not be enforced against equity and good conscience; that an agent of an insurance company, having ostensible general authority to solicit applications, binds his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding the actual excess of authority.

In Ellis-Jones Drug Co. v. Home Ins. Co., 158 Tenn. 237, 12 S. W. (2d) 707, Green, C. J., many of our cases, including the Fallow and Foresters cases, were cited and discussed, and it was pointed out that a custom or course of dealing between the parties will prevent the enforcement of a forfeiture.

In Hale v. Sovereign Camp W. O. W., 143 Tenn. 555, 226 S. W. 1045, 1049, Green, J., it was said: "Notwithstanding all such provisions, it was still within the power of the sovereign camp of defendant society to waive the provisions of its contract with the assured that are relied upon. Such a waiver could be accomplished, regardless of the nature of the organization of defendant, by its duly constituted authorities. This was decided after full consideration by this court in the case of [Independent Order of] Foresters v. Cunningham, 127 Tenn. 521, 156 S. W. 192, 5 A. L. R. 1569."

The Hale case involved insurance issued on true statements made by the insured to the agent who substituted a bogus application for the one actually made. The in-

surer was bound. See also American Nat. Ins. Co. v. Davidson, 166 Tenn. 13, 57 S. W. (2d) 788, Swiggart, J., reiterated the rule and cited and approved the Foresters case.

In Cole v. Atlanta Life Ins. Co., 23 Tenn. App. 525, 134 S. W. (2d) 912, Anderson J., the rule was recognized and applied.

In Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585, Neil C. J., it was said: ''The question remains, however, whether a waiver or estoppel arises where the insurance company has information at the time which, if pursued with reasonable diligence, would lead to a discovery of the true state of facts regarding the health of the insured, or other matter existing at the time upon which it is sought to base a forfeiture of the insurance, or a defense rested on some clause of the policy. We are of opinion that, in such case, there is an estoppel.'' Citing cases, 137 Tenn. pages 702, 703, 195 S. W. page 589.

Applying that rule in the instant case, we have the insurer charged with knowledge of the prematurity of the baby at the time the application was signed. No investigation was made. It is of course well known that premature babies do not have the same chance of survival as do normal babies, and that such chance of survival decreases in accordance with the period of prematurity.

Likewise, when the policy was delivered the agent was informed of the illness of the child and that it was in the hospital. He made no investigation but delivered the policy with full knowledge of these facts. If this be due to the ignorance of a new agent, then he was of the insurer's selection. If it be due to corrupt motives on his

part, it was without the knowledge, connivance or procurement of the beneficiary.

In this connection it might be pointed out that for the first ten years of the life of the policy there was liability of $150.00, and that the weekly premium was 50 cents, or $26.00 a year, or a little over one-sixth of the face of the policy, which apparently would indicate that great risk was attached to this particular class of insurance.

The charge complained of was in conformity with the views here expressed.

 We think the insurer liable for $150.00 plus interest. However, it does not appear the defense was made in bad faith; and the allowance of any penalty was erroneous. Provident Life & Accident Ins. Co. v. Maddox, Tenn. Sup., 195 S. W. (2d) 536. The judgment will be corrected so as to allow $150.00 plus interest from filing of suit and the cost of both courts.

Modified and affirmed.

McAmis and Burnett, JJ., concur.