THE SHELBY MUTUAL INSURANCE COMPANY,
Plaintiff in Error, v. E. L. WILSON and wife, EVELYN
WILSON, Defendants in Error.—383 S. W. (2d) 791.

Eastern Section. April 23, 1964.

Certiorari Denied by Supreme Court September 4, 1964.

Simmonds, Bowman & Herndon, Johnson City, for plaintiff in error.

Tom H. Rogan, Rogersville, W. H. Inman, Morristown, for defendants in error.

AVERY, P.J., (W.S.). This case originated in the Circuit Court of Hawkins County, Tennessee. E. L. Wilson and wife Evelyn Wilson were the plaintiffs below, and Shelby Mutual Insurance Company was defendant. The parties will be referred to with the status they each occupied in the Court below, except where referred to by name.

Plaintiffs seek to recover value of furniture, appliances etc. insured by defendant under a "Home-owners policy", against loss by fire etc. At the time the contract was procured on October 1, 1961, it was for a term of three years, and the plaintiffs then lived in Greeneville, Tennessee. In September of 1962 the plaintiffs moved to Rogersville, Tennessee, and took practically all their furniture etc. with them. Their first move to Rogersville was to a house on McKinney Avenue inside the city limits. In December of 1962 they moved from within the corporate limits of Rogersville to a house owned by one Mrs. Annie White, the lot of which was just outside, but adjoined the city limits, carrying their furniture with

them. This Annie White house was destroyed by fire on January 10, 1963, and their furniture was completely destroyed.

While the plaintiffs lived in Greeneville, Tennessee, and when they procured the insurance contract involved herein on their furniture, their home etc. they also operated a business in Rogersville, Tennessee. They continued to own the dwelling and other real estate in Greeneville, Tennessee. The Annie White house into which the plaintiffs had moved with their furniture was located at Rogersville, R.F.D. 1.

At the time this fire destroyed the furniture involved, the fire department of the City of Rogersville was called, but because the house was outside the corporate limits the fire department declined to make any effort to put out this fire.

Due notice was given to the defendant of the destruction of this furniture and inventory with value, but defendant declined to pay for same, and it declined to pay the loss because the property was not located on the premises described in the original insurance contract at the time it was destroyed, but admitted liability for $1,000 under a provision in the policy which insured "off premises property" to that amount.

The plaintiff contended that it had given the insurance agent from whom it had procured this contract, one James H. Rader, the knowledge of the fact that its unscheduled property insured had been moved to Rogersville, Tennessee, and that it had given the agent and others connected with the company knowledge of the fact that after they first moved to Rogersville, Tennessee, they again moved to Annie White place in Rogers-

ville by virtue of the fact that in moving the furniture etc. to this Annie White house, a piano was dislodged from the moving van in route, damaged considerably, and a claim for that piano damage had been filed through agent Rader, who had also given that knowledge to others who were employed by the insurance company, and that the insurance company had declined to pay that damage because damaged in transit other than "a named peril" not covered by the policy, and therefore had information that the furniture was being moved from the first location where it was placed in Rogersville to the location where destroyed by fire.

The case was tried before the Honorable John R. Todd, Circuit Judge, to a jury. There was a verdict for plaintiffs in the amount of $7,215.12, which was approved by the Court. Defendant saved exceptions. Judgment was rendered therefor after Court overruled motion for new trial. Defendant appealed in error to this Court and perfected same.

At the trial the defendant stood alone upon the provisions of its policy, and offered no proof. The policy was filed as Exhibit I to the testimony of the plaintiff, E. L. Wilson. The coverage and limits of liability stated in the policy is as follows:

"Named Insured and P.O. Address
E. L. WILSON AND WIFE, EVELYN WILSON
604 Asheville Highway,
Greeneville, Greene, Tennessee

"Policy Term: 3 years, Inception 10-1-61, Expiration 10-1-64.
* * * * *

"Insurance is provided only with respect to those of

the following coverages which are indicated by a specific limit of liability applicable thereto.

*"Sec. I—Coverages* *Limit of Liability*
A—Dwelling $20,000.00
B—Appurtenant Private Structures 2,000.00
C—Unscheduled personal Property 8,000.00
D—Additional Living Expense 4,000.00

*"Sec. II*
E—Comprehensive Personal Liability
 (Bodily Injury and Property Damage) 10,000.00 Each occurrence
F—Medical Payments 250.00 Each Person
G—Physical Damage to property of others 250.00 Each occurrence

\* \* \* \* \*

"Subject to the following Forms and Endorsements— Insert No. and Edition Date: MIC-2 12/59: HO-147: HO-50 4/61:

(9/59)

"The described dwelling of Frame construction is occupied by not more than two families and not more than two roomers or boarders per family.

"COVERAGE C — UNSCHEDULED PERSONAL PROPERTY.

"On premises: This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured, while on the premises, or at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.

\* \* \* \* \*

"2—Away from premises: This policy also covers un-

scheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an Insured, or at the option of the Named Insured, owned by a guest while in a temporary residence of, and occupied by an Insured or owned by a residence employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence temporarily occupied by an Insured. Property pertaining to a business is not covered.

"The limit of this company's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000."

"In the policy the First Mortgagee: Home Federal Savings & Loan Association of Johnson City & Greeneville, Tenn."

\* \* \* \* \* \* \*

The declaration alleges that the liability occurred by the destruction of property described in "Coverage 'C' " unscheduled personal property $8,000. The premium for three years on this whole policy is shown to be $231.00, and which is payable annually in the amounts of $77.00, "Payable At Inception $77.00; At each subsequent anniversary $77.00."

The pleas of the defendant are in substance and in fact at some points, as follows:

I—That it denies any contract with plaintiffs to insure property at the location where it was burned.

II—That it is indebted to the plaintiffs as alleged in the declaration.

And then the crux of the defense is in its plea III:

"For special plea, defendant says that it did contract with the plaintiffs to pay for loss of personal property while off of the insured premises 10% of what it insured said property if destroyed while on the insured premises, or not less than $1,000.00.

"Wherefore, defendant admits it owes the plaintiffs One Thousand ($1,000.00) Dollars, which it has heretofore offered to pay the plaintiffs, and which plaintiffs have refused. Defendant now tenders with this, its special plea, the sum of $1,000.00, in full of its obligation to the plaintiffs."

There is no replication to the special pleas. In the trial the defendants moved for a directed verdict when plaintiff had closed its case. That was denied, and as stated, defendant offered no proof. Plaintiffs contended that the proof showed that this agent Rader had been notified about the change of their location and the removal of this property on each occasion, that is, first from Greeneville to within the city limits of Rogersville, and secondly, from within the city limits of Rogersville to the Annie White house. Thus the doctrine of waiver and estoppel were invoked and upon that theory of the plaintiffs, the Court charged the jury.

Errors assigned are that the Court erred: No. 1 in refusing to sustain defendant's motion for directed verdict in its favor at the close of all the evidence, there being no evidence to support the verdict, and that it was contrary to the evidence and the law.

Assignment of error No. II is levelled at a part of the Judge's charge as follows:

"Now, gentlemen, a contract, an insurance contract between the parties is binding on the parties, but there

are certain provisions of the contract that may be waived by the agent, and the Court instructs you that if you find from this evidence, and by a preponderance of the evidence that Mr. Rader, Mr. James H. Rader, in Greeneville, Tennessee, was the agent of this company, wrote this policy for the company and that these people confided in him, and they told him that they were moving this furniture, or this property to him that they were moving this furniture, or this property to Rogersville, Tennessee, and he knew it, and if a piano was damaged, and the adjuster of this company, and Mr. Rader — if they knew that this piano was damaged, and was brought out of the furniture that was covered by this policy and they raised no question to these people, these insured, Wilson and wife, that if anything happened the policy wouldn't be for $8,000.00, but would be for only $1,000.00. The Court instructs you if you find that the agent, Rader, knew that they were moved the adjuster adjusting that piano loss knew that they were moved, and that he was working together with Mr. Rader to adjust this loss, the piano loss, and that they knew that the property was moved out of that house in Greene County to some other place, then the Court instructs you that the insurance company would be estopped to now come along and say we only owe you $1,000.00 and you will look to all the evidence to ascertain what the truth is and the facts, in other words, Gentlemen of the jury, a person cannot lull another person into a sense of false security, and then come along and take advantage of it, and I say that in this case the Court instructs you that if you find that the company knew this through its agent, and knowledge to the agent would be knowledge to the company, that this would

be a condition, the Court instructs you, that could be waived, and that if they waived it they are liable for the amount, if they didn't waive it, then the insured, Wilson and wife, are bound by the terms of the policy and could only recover $1,000.00."

It is said this was error because Mrs. Wilson did not tell Mr. Rader whether all, or only a part of the furniture was being moved.

2—The plaintiffs had coverage only up to $1,000 if the furniture was destroyed by fire in a location other than that where it was located when insured.

3—No request for additional coverage at another place.

4—No evidence that Rader agreed to obtain additional coverage.

5—Did nothing which would create a waiver or estoppel against defendant to rely upon its contract as written.

6—The furniture was not damaged or destroyed while located in the corporate limits of the town of Rogersville.

7—Was removed from within the corporate limits of the town of Rogersville to a more hazardous location outside the city limits and beyond the protection of the Rogersville fire department when destroyed.

8—No evidence that the adjuster who handled damaged piano claim was agent of defendant, or knew of location of the other property or was authorized to make new contract or change or alter the terms of its policy, except as related to its liability, if any, for damage to the piano.

9—That the charge told the jury in effect, that if the agent, Rader, knew plaintiff had "moved to Rogersville"

it was the duty of the agent to write a new contract of insurance on the furniture.

Assignment No. III is that the Court erred in charging the jury that:

"* * * if they told Mr. Rader that they were moving this property, that they were moving to some other place, and he knew it, they would be bound by it."

It is said that this is error (1) because there is no evidence that plaintiffs told Rader they were moving their furniture to some other place, and (2), the property was not located in Rogersville when destroyed by fire.

Assignment of Error No. IV, the Court erred in giving the following charge to jury:

"So, gentlemen of the jury, you may evaluate, you may consider the question of the age of the furniture, whether or not it might cost less now than it did when they bought it, or might cost more now than it did when they bought it, and the Court instructs you that furniture, household effects, are worth more to the owner than they would be if somebody bought them at a second hand sale because the owner can use them. He knows the value of it to him, alone, and the Courts have held that second hand furniture is worth more to the owner in value than it would be on the fair open market."

Assignment of Error No. V is the Court erred in charging the jury as follows:

"Now, gentlemen of the jury, our Appellate Courts have held that a person will get a policy and they will never read it. Did the agent tell these people that if this furniture was moved that they were only going to

get $1,000.00? Did this company's agent tell these insured that, when they told him that they had moved, or were moving the furniture, did he tell them that if they moved it they could only get $1,000.00? Could he lull them into a sense of false security in that way and manner and get by with it?

"The Court instructs you that if you find those to be the facts in the case the company would be estopped to deny it."

For reasons assigned that IV and V are error, counsel simply says, "See motion for new trial, Tr. 11-12".

We will first dispose of assignment of error No. IV. The policy insures the furniture etc. up to $8,000 and provided that if destroyed, defendant's liability shall be:

"the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss."

The declaration alleges the value of property loss to be $8,000. It is noted that there is no plea that the value of the property loss was less than the value sued for. Its special plea admits liability to the extent of $1,000, because the property was destroyed after it had been moved from the place where it was when first insured. The proof shows by a preponderance that the value of the property destroyed was in the amount as fixed by the jury. The Court, in its charge, told the jury in a few words, just prior to giving them the charge complained about in assignment No. IV that:

"Now, the Plaintiffs say that the value of that property was $7,215.12, and you will look to see whether or not it has been disputed. Has it been shown otherwise, Have you gentlemen any evidence here from this witness stand? You've got to decide this case according to the law and the evidence that you've heard from this witness stand and admitted for your consideration, and nothing else. You can only go by the evidence in this case and instructions given you by the Court."

 Then he charged in exact language the next paragraph which we have quoted in this opinion with respect to value assigned as error, and while it may not have been expressed as other Judges might have done, there being no proof that the value was less than that shown by the proof, certainly this would be harmless error. At least we could not find that it adversely affected the verdict of the jury to the disadvantage of the defendant. Furthermore, counsel for the defendant offered no special request in any wise to further explain to the jury how it might evaluate the used furniture which had been insured. In effect the two paragraphs of the charge as to value is that the only proof thereof is undisputed. The jury fixed the value which the proof shows. We think in view of that fact we must overrule assignment of error IV.

We next consider assignment of error No. V which we have copied in this opinion on page 438 hereof. We must remember that the agent of defendant is as much its agent after the policy was written as before. T.C.A. Section 56-705 (Williams Code 6087), was enacted specifically making the agent who writes the insurance and who handles the agency of the company, an agent of the company, not of the insured.

In Industrial Life & Health Ins. Co. v. Trinkle, 30 Tenn.App. 243, 204 S.W.(2d) 827, our Court went far enough to say that due to certain unethical and sometimes practices that bordered on corruption, it was necessary to enact this legislation and declare the solicitor of insurance to be the agent of the insurer, and not the agent of the insured. Therefore, for all intents and purposes as a local matter the agent becomes the insurance company.

Furthermore, in the case of T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 44, 250 S.W.(2d) 7, 11, it is said:

"In a number of cases by the Court of Appeals, in which we denied certiorari, it has been decided that for an application of Code sec. 6087 (now T.C.A. 56-705), it is not necessary that the Insurance Company should have appointed the solicitor its agent prior to the transaction, nor that there should be in existence at the time of the transaction, a common-law agency relationship between the Company and the solicitor." Citing Maryland Casualty Co. v. F. B. Hunter & Co., 8 Tenn. App. 516, 522; Cheek v. American Eagle Fire Ins. Co., 6 Tenn.App. 632.

So that if the proof in this case warrants the jury and the Court in finding that the plaintiffs told the agent that they were moving from Greeneville to Rogersville, such notice to agent is likewise to company, that the furniture was being moved from the place where it was located when it was insured, and the company having that information, and its agent, had a duty to perform.

It could have immediately said when moved from the place where it was when insured it is insured only for

$1,000. On the other hand, it could have said we will continue your insurance as is or write you a new contract or that we will waive that portion of the policy. This information of the move was imparted to the agent prior to the time the move was made and before the next annual premium was due on the policy, and he knew it at the time this premium became due and at the time it was paid. Therefore, the company knew that it had been moved, and if it did not want to continue the insurance as originally written at the point where the furniture had been moved to or the home to which the people had gone in Rogersville, it was under an obligation to so notify these plaintiffs that they might procure insurance otherwise.

It might be argued that the information that was given with respect to the piano being dislodged from the moving van at the time that the move was made from one place to another after they had first moved to Rogersville did not constitute a waiver. It is clear that the company had notice of the damage to the piano through that move because the agent had such notice, and not only that, but it is insisted the adjuster which worked upon that particular matter and determined that there was no liability because the risk that damaged the piano was not insured against, as is said in the brief of learned counsel for the defendant, might have been an independent adjuster and not the agent of the defendant company. That can not be true because of the fact there is filed with this record the original of an exhibit of a letter written by Mr. Rader to Mr. and Mrs. Wilson, showing that he knew their postoffice box 307 at Rogersville, Tennessee, and in which he said:

"On yesterday afternoon, I talked with the adjustor for Shelby Mutual about the matter of your damaged piano.

"He is not positive about the situation, but feels that there is no coverage under your policy. A Homeowner's Policy is a 'Named Peril' policy and the damage to your piano did not occur by any of the hazards covered by the policy.

"I will not stop with his decision, however, but will take the matter up with the company itself to see if there is coverage for your loss.

"Please be assured of my best wishes at all times.

"Yours truly, Jas. H. Rader."

So that the jury had the positive knowledge in the words of Mr. Rader himself that the adjuster with whom that claim had been placed, was "the adjuster for Shelby Mutual", and further Mr. Rader had given adjuster notice about what he was considering and how it happened, for he said "about the matter of the damage to the piano."

■ Thus it would seem that the insurance company, the defendant, by its agent and its adjuster, was informed with respect to every move that had been made by its assured, the plaintiffs.

While it was not proper for the Court to say to the jury:

"Now, gentlemen of the jury our Appellate Courts have held that a person will get a policy and they will never read it,"

he should have, if he was going to say anything of that nature, simply stated, the Appellate Courts, in com-

menting upon the ordinary individual who carried an insurance policy, would not read it. The only thing wrong with that statement is where he said "held" instead of simply saying they had recited the fact which was generally common knowledge. But can we say that that affirmatively affected the jury? We can not. Again we say that if there was embraced within the statement of the Court under assignment of error V something that would be calculated to mislead the jury, could it be said that the defendant can now rely upon that when as a matter of fact he sat silently by and offered no special requests to correct it? We think he can not and that assignment of error is overruled.

Now in our determination of assignment of error No. III, which we have set out hereinabove, counsel has taken a clause out of a paragraph and has disconnected it from the context in which the Court meant for it to be considered. To give that clause meaning, as the Judge meant it to have, it must be stated in connection with the entire charge and particularly with the part of the charge relating to burden of proof and weight to be given to evidence, and then we can see what it means. The Court in that connection, said:

"THE COURT: Gentlemen of the jury, before a Plaintiff can recover they must make out their case by a preponderance of the evidence, that is, a greater weight of the evidence must be in support of the contentions of the Plaintiff, or the insistence of the Plaintiff.

"Now, in other words, in weighing the evidence, of course you will consider the interest of the party, or lack of interest, and you will consider what was in the minds of the parties and what did they know, and

if Mr. Rader—if they told Mr. Rader that they were moving this property, that they were moving to some other place, and he knew it, they would be bound by it.

"Now, if you find in favor of the Defendant insurance company, your verdict would be for $1,000.00.

"Now, if you find in favor of the Plaintiffs, then you will go further and you will assess and fix the damages, I mean the value of this property."

Just before making above statement the Court inquired of counsel if they wanted him to charge the rules with respect to weighing evidence, remarking that this same jury had heard him charge the rules with respect to the weight of evidence in other cases during that week, and they both replied that they did not. He then simply said that the plaintiffs to recover would have to make out their case by a preponderance of the evidence, and that was by a greater weight of the evidence and that the evidence must support the contention of the plaintiffs.

He had already told the jury if plaintiffs told Rader they were moving to Rogersville and that after they had moved to the city of Rogersville, they had again moved to another place, which was the Annie White house, what he meant by the "other place" the jury could not be misled about his meaning by that expression. It is a simple statement to the effect that if the whole facts about that second move were known to the agent and to the adjuster, the plaintiffs had carried the burden required of them. There is nothing to deceive the jury in that statement when taken in connection with the context in which the Judge meant for it to be. Therefore,

certainly that did not prejudice the jury, and that assignment is overruled.

This brings us now to consideration of assignment of error No. II which is hereinbefore copied on page 435 of this opinion.

██ If the record reveals the fact that the agent had the facts known to him, or the company through its agent knew what these people were saying about the information that he did have, the company with its agent in the courtroom sat there and heard it, and offered no proof, was not put on the stand by his employer, the presumption would be that if he had testified his evidence would have supported that of the plaintiffs. Therefore, in determining this particular assignment we must analyze the evidence which these people say they imparted to the agent and through him to the company.

The only witnesses introduced were Mr. and Mrs. Wilson, the plaintiffs. Mrs. Wilson testified that they moved to Greeneville in 1950 and that at the time they procured the insurance involved, they lived at 604 Asheville Highway, Greeneville. By her proof and by that of her husband it shows that they moved from Greeneville to Rogersville in September 1962, and about two weeks before they moved from Greeneville to Rogersville, either in Mr. Rader's office or in the drugstore, just beneath his office, she had a conversation with Mr. Rader in which she informed him that they were moving from Greeneville to Rogersville, and explained to him why they were moving, which was to the effect that Mr. Wilson was going back and forth practically every day from Greeneville to Rogersville and they decided it would be less expensive and more convenient for them to live in

Rogersville. Her exact statement as to what she said to him in that conversation is as follows:

"I told him we were moving, my husband was driving back and forth from Greeneville to Rogersville each day, and that it was too much, and we had decided to move to Rogersville. * * * That we had decided to move our furniture, that we had rented a house here and were moving in it."

She stated further that on different occasions after they had moved to Rogersville, when she would be back in Greeneville, Mr. Rader would ask her how they were getting along in Rogersville, and "how the theatre was doing". She said she was back in Greeneville two or three times a week. She also stated that she was with her husband on December 7, 1962 in Mr. Rader's office when they paid the second annual installment of $77.00 on this insurance policy, and that at that time when the receipt was written out by Mr. Rader he first wrote their address as 604 Asheville Highway, and then erased that address from the receipt. The record also shows that they paid, on that same date, a premium due on another house owned by Mr. Wilson which was located in Greeneville, receipt for that is filed as an exhibit also. She stated that on that occasion she sat in front of Mr. Rader's desk and saw him write the receipt, including that erroneous address, and then saw him scratch it out.

Mr. Wilson testified that he made up the inventory of the furniture destroyed, in the manner as directed by the adjuster. Mr. Wilson testified that in the move from one point at Rogersville to another the piano fell from the dray on December 6, 1962, and on December 7, the day that he paid the premium, which was the second anniversary premium of the policy, and the day that

Mrs. Wilson said that she was with him in Mr. Rader's office, was the day the matter of filing a claim with agent Rader for damage to piano, and asked him to find out if they could collect the damage caused by that accident, and it was then that he gave Mr. Rader information that they had moved from the place to which they first moved when they went to Rogersville to this particular place where the property was when it was destroyed the following January, and in that move the piano was damaged.

He also testified that the wrong address was put on that second annual premium receipt by Mr. Rader and that Mr. Rader erased that error at that time on the address. Mr. Wilson's statement with respect to his exact words or his analysis of what he said, is as follows:

"We told Mr. Rader on December 7 that we had moved to Rogersville, we did not go back with an itemnized statement with pieces we had moved, we told him we had moved."

Exhibit 5 to the testimony of Mr. Wilson is an itemized statement of the property destroyed, with the value of each separate item shown, which values were apparently fixed by him, the total of this exhibit was $7005.12. However, an additional inventory or a supplemental inventory was filed as Exhibit 6 to Mr. Wilson's evidence, in which it is shown an additional $210.00 representing the value of 11 different items not included in the original inventory. This accounts for the $7,215.12 verdict.

The record shows that at the close of the testimony counsel for the plaintiffs made this statement to the Court, which is carried into the record as a part of the record shown in the bill of exceptions:

"MR. INMAN: May it please the Court, first, I would like for the record to show that Mr. James H. Rader, agent for the company, did not leave the courtroom under the rule, and sat with Counsel for the Defendant during this case, and did not testify."

It should be further said that two special requests were offered by defendant, both of which were denied, but there is no assignment of error to the effect that the Court erred in refusing to charge them. They are in the record but will not be further referred to in this opinion.

Again we call attention to the fact that Exhibit 4 to the testimony of Mr. E. L. Wilson, written by Mr. James H. Rader, is a letter dated December 10, 1962, just three days after Mr. and Mrs. Wilson say they were in the office of Mr. Rader with respect to the damage claim on the piano and he was then told about their moving, and their furniture, of which that piano was a part. This letter is addressed as follows:

"Mr. and Mrs. E. L. Wilson,
P.O. Box 307
Rogersville, Tennessee."

The body of this letter is copied on page 11 of this opinion. This address on this letter clearly shows that Mr. Rader knew that these people had moved to Rogersville and at least some of their furniture had been carried with them that was insured under the policy, a part of which was this particular piano.

Thus, we come to the conclusion that there is no escape from the fact that this insurance agent had information long before this fire occurred that these people had moved to Rogersville, Tennessee. Mrs. Wilson said she told him we are moving ourselves and the furni-

ture to Rogersville. Whether she explained everything she was moving, certainly was not required of her. It is a matter of common knowledge when a family composed of a man, his wife and children move from one town to another, such as occurred in this particular case, in the absence of some specific statement about it, their furniture would be moved along with them. This common knowledge was reinforced by what occurred between the Wilsons and Mr. Rader with respect to the damage to the piano.

■ We have a good many opinions in Tennessee with respect to the rights of the parties in cases where a vacancy has occurred, or where the insured property was vacant at the time the policy of insurance was placed upon it. One such case is that of Baird v. Fidelity-Phoenix Fire Ins. Co., 178 Tenn. 653, 162 S.W.(2d) 384, 140 A.L.R. 1226, relied upon to support the contention of the defendant, in which the statement is made:

"It is said that a waiver is an intentional relinquishment of a known right, whereas as estoppel can be maintained only on the ground that by the fault of one party, another has been induced to change his position for the worse in such a manner that it would operate as a virtual fraud on him to allow the party by whom he had been misled to assert the right in controversy."

We find no controversy in connection with that particular statement. That is a proper statement of the law and when read in the light of the facts reported in that particular case, certainly we agree with that statement, but it has no application to the case at bar except as it does deal with a waiver and with estoppel, in a definite way.

We are not unmindful of the statement in Koontz v. Fleming, 17 Tenn.App. 1, 65 S.W.(2d) 821; 56 Am.Jur. Waiver Section 22, relied upon by counsel for the defendant approving the rule a waiver claimed by an assured or insured the burden of proving same is upon that one who so contends.

■ We also agree thoroughly with the quotation in counsel's brief from the case of the Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 402, 245 S.W.(2d) 775, 779, wherein it is stated:

"In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies, and knowledge of matters affecting the risk or conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer."

That unquestionably is the law. But here we do not have the question of the solicitation of the insurance, such is not involved. It is a question of whether or not the company, the insurer by virtue of the knowledge known to its agent is bound by that knowledge, and can not now rely upon a provision of its policy in order to defeat the claims for insurance on the ground that the property had been moved from the residence where it was insured to another place, which policy provision can be waived by the agent and company, to defeat the assured in its suit to recover the reasonable market value of the property destroyed.

■ We think the Court would have been warranted

had he directed a verdict in favor of the plaintiffs, insofar as the applicability of the contract is concerned relative to waiver and estoppel, but the Court below did not see fit to do so. If he was in doubt he should have left the question with the jury to determine, which he did, and there is ample proof to sustain the verdict of the jury.

■ Thus we must conclude that Mr. Rader had the necessary knowledge of the moving changes by these plaintiffs who were so insured and of that portion of the plaintiffs' property here involved. His knowledge was imputable to the company. Both by statement and circumstances had knowledge of the fact that the piano was damaged while being moved with this other property in Rogersville, Tennessee and not in Greeneville. We are in accord with counsel for the plaintiffs in so contending, and that this relationship of agent to company is well sustained in T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.(2d) 7; Johnson Transfer & Freight Lines v. American Nat'l Fire Ins. Co., 168 Tenn. 514, 79 S.W.(2d) 587, 99 A.L.R. 277, and thus the defendant had all the knowledge that was known to its agent.

The case that more nearly fits the facts of this case is one that was decided by this Section of the Court and relied upon heavily by counsel for the plaintiffs. In the case of Miller v. Monticello Insurance Co., 50 Tenn.App. 363, 361 S.W.(2d) 496, an opinion prepared for this Section of the Court by Judge Carney, where practically the same verbiage was involved in an insurance contract with respect to the coverage of a welding machine. In that case the policy had a provision in it that the coverage applied while the insured property was "on the

premises described". This particular welding machine was moved about from point to point and that was known to the agent. The company in that case defended on the grounds that the policy limiting the coverage of the welding machine while on the premises insured bound the assured, but we said that since the agent had knowledge of what was happening and could have waived that particular provision, which gave the company such knowledge of the facts. There was a verdict for plaintiffs but on motion for new trial the Judge having tried that case, granted the motion and directed a verdict for defendant. We reversed and granted a new trial, which was the only thing we could do since the trial Judge did not agree with that verdict. We said:

"Under these circumstances we think a jury might well find that the defendant's agent, Mr. Brower, and therefore the company itself, waived the restriction or limitation of coverage and also lulled Mr. and Mrs. Miller into a sense of false security by leaving them under the impression that they were fully covered under the terms of the policy which was issued."

We feel the same statement applies in the instant case and on authority of that case and the facts as proven by plaintiffs, together with the circumstances as shown and referred to in this opinion, we feel that all the assignments of error are not well taken, and they are accordingly overruled.

The verdict of the jury and judgment of the trial Court thereon is affirmed, together with interest thereon from the date the motion for new trial was overruled.

The cost of the case will be paid by the defendant below, who is plaintiff in error in this Court, and the

sureties on its appeal bond. Judgment will be entered in this Court in accord with this opinion.

Carney, J., concurs.

Bejach, J., dissents.

BEJACH, J. I respectfully dissent from the majority opinion in this case. I would be disposed to agree with the majority if the fire loss involved had occurred while the personal property insured was located within the corporate limits of Rogersville, Tennessee. I cannot agree, however, that insurance company waived its rights under the policy when the property of plaintiffs was moved beyond the corporate limits of Rogersville, where there was no fire protection, and where, in fact, fire protection was refused when the fire that consumed the property actually occurred. The mere fact that a claim for damage to a piano had been filed with the insurance company when the piano was moved from inside the corporate limits of Rogersville to the location outside that town cannot, in my opinion, serve as notice to the insurance company that all of plaintiffs' personal property was being moved to that new location. The policy covers, to the extent of $1,000, property located elsewhere than at the place named in the policy, and I can see no reason for charging the insurance company with knowledge that property of a value greater than $1,000 was being moved outside the corporate limits of Rogersville. The insurance company has tendered payment of $1,000, which is the limit of its liability for destruction of property located elsewhere than as described in the policy. In my opinion, liability on the policy here involved should be limited to that amount.