Paula C. BASS, as Trustee of the Arthur Bass Irrevocable Trust and Executrix of the Estate of Arthur C. Bass, Deceased, Plaintiff–Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES; Joe Ades, as Agent of the Equitable Life Assurance Society of the United States, Defendants–Appellees.

No. 01–6280.

United States Court of Appeals, Sixth Circuit.

Aug. 13, 2003.

BEFORE: BATCHELDER and CLAY,

Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge.

Paula C. Bass, Trustee of The Arthur C. Bass Irrevocable Trust and Executrix of the Estate of Arthur C. Bass, brought this action against The Equitable Life Assurance Society of the United States (Equitable) and Joe Ades, Equitable's agent, to recover death benefits under a life insurance policy issued by Equitable to Arthur, her late husband. Paula alleged that Equitable wrongfully rescinded the policy. Equitable moved for summary judgment on the ground that Arthur had failed to notify it of his cancer diagnosis and related surgery prior to the date on which it issued his policy. The district court granted the motion and Paula appeals. The district court had jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. Our review of the summary judgment is de novo. Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 910 (6th Cir.1995). We hold that Arthur's failure to disclose his cancer diagnosis and related surgery was a material misrepresentation entitling Equitable to rescind the policy and affirm.

## FACTUAL BACKGROUND

The material facts may be summarized as follows:

In 1987, Equitable had issued a term life insurance policy to Arthur in the face amount of $750,000. In 1989, Equitable converted that policy to a whole life policy. In 1991, Arthur decided to apply for a new term life policy in the face amount of $750,000 to reduce the premiums he paid for life insurance coverage by replacing his existing whole life policy.

On July 19, 1991, Arthur executed the Equitable's Application Part 1 for Life Insurance. Neither Part 1 nor Part 2 executed on August 6, 1991, and considered part of his application, disclosed any diagnosis of cancer. Part 1 of the application states in relevant part:

Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application:

(a) until a policy is delivered and the full initial premium for it is paid ... and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid.

...

No agent ... has authority to modify this Agreement ... nor to waive any of The Equitable's rights or requirements. The Equitable shall not be bound by any information unless it is stated in application Part 1 or Part 2.

On September 10, Arthur had an endoscopic examination and biopsy of his throat, resulting in a diagnosis of severe glandular dysplasia/carcinoma in situ. On September 17, a second endoscopic examination was performed with a diagnosis of probable carcinoma/gastroesophageal junction. On September 19, an esophagram was performed, which "suggest[ed] a malignant lesion."

On September 23, Ades notified Equitable that Arthur wished to increase the face amount of the new policy from $750,000 to $1,000,000. On September 26, Ades renewed the request to increase the face amount of the policy and transmitted a

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

draft executed by Arthur in payment of the first premium.

On September 25, Arthur was admitted to El Camino Hospital for surgical removal of cancerous tissue from his throat. The medical history states that Arthur was "admitted with biopsy proven carcinoma in situ and ... distal esophageae obstruction." Surgery on that date confirmed the cancer diagnosis.

On October 15, Equitable issued the new policy to which was attached an amendment stating "issue with face amount to be $1,000,000." The amendment form states:

This amendment is to be taken as a part of said application, subject to the agreement therein contained; said application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the policy or contract. To the best of my knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment.

Arthur executed this amendment on October 30.

On August 22, 1993, Arthur died as a result of metastasis of his esophageal carcinoma.

## DISCUSSION

The parties agree that Paula's claim is governed by Tennessee law applicable to insurance contracts. It provides in relevant part:

No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn.Code Ann. § 56–7–103.

Paula does not dispute that the application contained misrepresentations. The application said nothing about Arthur's cancer. While the application had been executed by Arthur before his cancer diagnosis was made, it states that the policy shall not go into effect unless the statements and answers in it continue to be true and complete without material change as of the time the premium is paid. On September 26. Ades transmitted Arthur's draft in payment of the premium to Equitable. On the preceding day, September 25, Arthur had been admitted to the hospital for cancer surgery. When Arthur paid the premium, therefore, there had been a material change in his medical condition. The failure to disclose the change was a material misrepresentation.

Furthermore, on October 30, Arthur executed an amendment, which increased the face amount of the policy to $1,000,000 responsive to his request. In the amendment, which by its terms became a part of his application, Arthur represented that the statements and answers in the application continue to be, without material change, true and complete as of the date of the amendment. Because of the material change in his medical condition, this was an additional misrepresentation.

Paula argues that Arthur made no misrepresentation because Equitable's agent Ades had actual knowledge of the change in his medical condition when the amendment was signed and that knowledge should be imputed to Equitable. We disagree. Assuming *arguendo* that Ades had knowledge, that knowledge cannot be imputed to Equitable. The application signed by Arthur states that Equitable shall not be bound by any information not

stated in the application and that no agent has authority to modify the agreement or waive any of The Equitable's rights. Arthur was bound by the terms of the application he signed. *DeFord v. Nat'l Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617, 621 (1945) (stating that "one who enters into a written contract . . . is presumed to know the contents of the writing and is bound thereby"); *see also Beasley v. Metro. Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146, 148 (1950).

Paula argues that under *Industrial Life & Health Insurance Co. v. Trinkle*, 30 Tenn.App. 243, 204 S.W.2d 827 (1947), Equitable is bound by the knowledge of Ades, its agent. We need not resolve the question whether the decision of the court of appeals can be squared with that of the Supreme Court in *DeFord*. Suffice it to say that the present case is distinguishable in that Arthur, who had only recently undergone cancer surgery, knowingly made a false statement to Equitable when, in signing the October 30 amendment, he represented that "the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment." We do not think that *Trinkle* permits an insured to avoid responsibility for his misrepresentations by hiding behind the company's agent. As noted in *DeFord*, "the rule [that imputes an agent's knowledge to the principal] is intended to protect those who exercise good faith, and not as a shield for unfair dealing." 185 S.W.2d at 620, 621 (quoting *Mutual Life Ins. Co. v. Hilton–Green*, 241 U.S. 613, 623, 36 S.Ct. 676, 60 L.Ed. 1202 (1916)).

Finally, Paula argues that even if a misrepresentation was made, it does not implicate the statute unless it was made with intent to deceive or it increased the risk of loss. Equitable did not contend that the misrepresentations were made with intent to deceive. But Paula argues that the misrepresentation could not have influenced Equitable's judgment in making the contract for two reasons. First, she argues that through imputation of Ades's knowledge, Equitable had knowledge of the true facts. As discussed above, the terms of the application bar imputation. Second, she argues that the misrepresentation made on October 30 could not have influenced Equitable's judgment to issue the policy, which it had issued on October 15. But by its terms, the October 30 amendment became part of the original application and the misrepresentation in it effectively became a misrepresentation made in that application. More importantly, in the application itself, Arthur represented that the statements and answers in it would continue to be true until the premium was paid, i.e., September 26, which was one day after the cancer surgery and nearly two weeks before the policy was issued. Thus, there can be no doubt that the medical information withheld from Equitable "increase[d] the risk of loss."

The parties also raise two pleading issues. First, Paula contends that the district court erred in holding that she did not plead the torts of negligence, negligent misrepresentation, and fraudulent concealment against Equitable. The short answer is that the issue is not material since Paula has not shown how she would have a claim against Equitable other than under the policy, a claim that the district court's grant of summary judgment to Equitable disposed of. Second, Equitable contends that the release executed by Paula in favor of Ades following the summary judgment ruling released Equitable from liability. Because we affirm the summary judgment for Equitable, we need not reach this issue.

**CONCLUSION**

For the reasons stated, the judgment is **AFFIRMED.**