# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE August 30, 2010 Session

## ALLSTATE INSURANCE COMPANY, v. DIANA LYNN TARRANT, et al.

### Appeal from the Chancery Court for Sevier County No.
### 08-10-463      Hon. Telford E. Forgety, Jr., Chancellor

### No. E2009-02431-COA-R3-CV - FILED OCTOBER 21, 2010

Plaintiff insurer brought this declaratory judgment action to determine which of the two policies issued to defendants insured and their corporation, covered a van which had been involved in an accident. Plaintiff named the insureds as defendants, as well as the third party who had filed a tort action against the insureds for personal injuries. The Trial Court conducted an evidentiary hearing and ruled that the insureds had told the agency plaintiff to keep the van in dispute on the commercial policy, but it had transferred the van to the insureds' personal policy. The Court further ruled that a notice of the transfer was sent to the insureds by plaintiff, and plaintiff sent at least five bills to the insureds that reflected the van was then insured under the personal policy and not the commercial policy. The Court concluded that the insureds ratified the change and ruled that the van was insured under the insureds personal policy. On appeal, we reverse and dismiss the action.

### Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and the Case Dismissed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Billy J. Stokes and Jon M. Cope, Knoxville, Tennessee, for the appellants.

David L. Franklin, Chattanooga, Tennessee, for the appellee.

### OPINION

-1

In this Declaratory Judgment action brought by plaintiff/appellee Allstate Insurance Company (Allstate) on October 17, 2008, the complaint for declaratory judgment asked the Court to determine which of two insurance policies covered the defendants' 2002 Chrysler Town & Country van that had been involved in an accident. The defendants, who owned the Town & Country van, are Diana Tarrant, John Tarrant, and Blue Ribbon Cleaning, Inc. The Tarrants are the sole shareholders in Blue Ribbon Cleaning, and the accident giving rise to this action occurred on June 17, 2005 when a motorcycle driven by defendant Charles E. Leatherwood and the Town & Country van driven by Diane Tarrant collided. Leatherwood then filed suit against the Tarrants on May 11, 2006.

At the time of the accident the Tarrants owned several vehicles individually, which were used by their business, Blue Ribbon. The Town & Country van at issue was leased by Blue Ribbon. In March, 2005, the Tarrants and/or Blue Ribbon insured six vehicles, including the Town & Country van, under an Allstate commercial policy with liability policy limits of $500,000.00 combined single limits. At the same time, Mr. Tarrant insured two other vehicles, a camper and a 1993 BMW, under an Allstate personal lines policy that provided liability coverage of $100,000.00 per person and $300,000 per accident. The complaint alleged that in the latter part of March 2005 the commercial policy came up for renewal and Mr. Tarrant asked the Lonnie Jones Agency of Knoxville, an agent for Allstate, to move several vehicles from the commercial policy to the personal policy in an effort to decrease the premiums. The Lonnie Jones Agency complied with this request and moved three vehicles, including the Town & Country van, from the commercial policy to the personal policy. The complaint alleges that the change was effected by a policy endorsement on April 4, 2005. Mr. Tarrant maintains that he never instructed the Lonnie Jones Agency to move the Town & Country van to the personal policy from the commercial policy and that the agency did so without his knowledge, permission or consent. The Tarrants insisted that their liability coverage is $500,000.00 for the accident with Mr. Leatherwood, which is the policy limits of the commercial policy. Plaintiff, on the other hand, believes the coverage provided to the Tarrants is $100,000.00 pursuant to the personal policy. Accordingly, Allstate asked for a declaratory judgment for a determination of which policy applies to this loss.

The Tarrants filed an answer, denying that they ever intended to have the Chrysler van moved from the commercial policy to a personal policy as the van was leased in the name of Blue Ribbon Cleaning, Inc., paid for by Blue Ribbon and used for the business purposes of Blue Ribbon and they claimed they had not authorized the change in coverage for the van. The Tarrants requested that the Court declare that the Chrysler van was covered by the commercial policy and that any modifications made to the policy by the Lonnie Jones Agency was by mistake of the agent and that they had no knowledge of the change in coverage until after the accident occurred. The answer contains a general pray for relief of "further and general relief as justice in this cause may require upon the hearing of this matter."

The Tarrants did not ask the Court to reform the policy in their answer, and defendant Leatherwood likewise filed an answer and he did not request reformation of the contract of insurance either.

Leatherwood, in his answer, stated that the change in coverage was based on a mistake made by the Lonnie Jones Agency and that Tarrant had not instructed the agency to make the change. Leatherwood argued that "an insurance company is estopped to take advantage of a condition which its agent by mistake or negligence has failed to handle properly in a policy", *citing, Henry v. Southern Fire & Cas. Co.,* 330 S.W.2d 18, 32-33 (Tenn. Ct. App. 1958.)

The case was tried on September 22, 2009, and an order of judgment was entered on October 22, 2009. The Court sustained Allstate's declaratory judgment action and held that the 2002 Chrysler Town & Country van was covered by the Allstate personal lines policy when the accident occurred. The Court incorporated its Memorandum Opinion as part of the judgment.

The Tarrants and Leatherwood have appealed.

At the time of the trial the Tarrants were the sole shareholders of Blue Ribbon Cleaning, Inc. (Blue Ribbon). The Tarrants had operated this business for twenty-eight years, and had a personal lines insurance policy with Allstate Insurance Company, and before purchasing the Town & Country van at issue, all of the Tarrants' vehicles were registered to John Tarrant and insured under the personal policy. The Chrysler Town & Country van was leased in Blue Ribbons' name and Tarrant was told by an Allstate Agent that "anything that we used for employees or business was to be put under the commercial line. . . .". Thereafter, Allstate created a commercial policy with Blue Ribbon as the named insured, and Tarrant explained that based on the information he received from Allstate, he "realized that we needed to have everything that is commercial under that policy." Most of his vehicles were switched over to the commercial policy which was converted to a fleet policy.

At the time the Town & Country van was leased and put on the commercial policy, Allstate's agents acquired all information on the van from the dealership, including the names of the lien holder and lessee, as well as the type of vehicle it was, the amount of the lien, the name of the lessor, and the value of the vehicle at the time of sale. However, Allstate's computerized records did not show that there was a lien holder and showed that the van was owned by John Tarrant, rather than showing it was leased to Blue Ribbon.

In early 2005, Mr. Tarrant received a renewal notice from Allstate that showed an increase in his premium rates. Jones, owner of the Lonnie Jones Agency, testified that it was Mr. Tarrant's custom to place a call to him each year when the renewal notice went out to seek a reduction in premiums. Jones said that Tarrant was always very open with him that if Allstate could not reduce the premiums to Tarrant's satisfaction, he would take his insurance business elsewhere. Jones stated that Tarrant was "real adamant about that and kind of takes a threatening position to me." True to form, Tarrant called Jones after receiving the renewal notice and, following a discussion regarding whether the premium rates could be decreased, Jones transferred Mr. Tarrant to one of the licensed insurance agents in his office, Patricia Smith, to continue the discussion.

Tarrant recalls that he and Ms. Smith discussed several possible ways the premiums could

be decreased. Ms. Smith testified at trial that she had absolutelyno recollection of this conversation and she could only state what her customary practices were when discussing changes in policies with an insured. She stated that her usual practice was to take notes during the conversation and then run a proposal based on the scenario that was decided upon. She said she would not have retained the notes she took of the discussion.

Mr. Tarrant testified that he requested a quote for leaving all of the four vans on the commercial policy but transferring all other vehicles to his personal policy. He stated that Ms. Smith provided him with a quote based on his request. He then instructed her to retain all of the vans on the commercial policy and to place the other vehicles on the personal policy. Despite Ms. Smith's unequivocal testimony that she had absolutely no recollection of any of the conversations with Mr. Tarrant and no recollection of her making the actual changes to the policy, she then stated that Mr. Tarrant told her to put the Town & Country van on the personal policy. She explained to the Court this statement was based on the fact that she moved the Town & Country van to the personal policy and that she would not have transferred it if she had not been instructed to do so. On the other hand, Mr. Tarrant testified that he clearly remembered that he told Ms. Smith to retain all of the vans on the commercial policy. The Trial Judge stated that he found Mr. Tarrant's testimony on this issue credible and uncontradicted as neither Mr. Jones nor Ms. Smith had any recollection of these conversations and there was no other evidence to rebut Mr. Tarrant's statements.

Ms. Smith transferred the Town & Country van to the personal policy along with the Lexus car and the Dodge truck. Ms. Smith and Mr. Jones both admitted on cross examination, after being impeached with their testimony, that the Town & Country van, which was leased, registered and licensed to Blue Ribbon, should not have been placed on a personal lines policy. However, because of apparent faulty computer record keeping on the part of Allstate, Ms. Smith stated that she did not know at the time of the transfer that the Town & Country van was leased or that it was registered to Blue Ribbon and not to Mr. Tarrant even though Allstate had acquired this information at the time of the lease. Ms. Smith conceded that this information should have been in the computer record she consulted when she made the policy transfers.

Tarrant testified that he did not learn that the Town & Country van had been transferred to the personal line policy until Mr. Leatherwood filed suit against the Tarrants in October 2008 and he consulted an attorney. At that time he found out that the insurance coverage on the van was limited to $100,000.00, and at trial Allstate showed that Mr. Tarrant had been sent a packet from Allstate that included notification of changes to his motor vehicle policy and his premium. The letter is undated and Mr. Tarrant claimed that he had no recollection of receiving it.[1] The letter, which makes no reference to a particular policy states in part:

We've sent along this mailing to verify the changes to your policy that you recently

---

[1]

An Allstate representative testified that the letter was mailed on March 25, 2005.

requested. The changes took effect on 04/04/05. Please look over all the information in this mailing and call us right away if you have any questions or if anything isn't exactly right.

The accompanying Amended Policy Declarations includes these changes: The addition of you 03 Dodge Trk Dr3500 2wd The addition of your 95 Lexus Es300 A change in insurance coverage for your 02 Chrysler Town-Country. A change in description for your 02 Chrysler Town-Country The addition of the passive restraint discount 02 Chrysler Town-Country The deletion of one or more operators

Your premium for the current policy period has been increased by a total of $573.26.

The letter goes on to reference an Amended PolicyDeclarations and urges the insured to compare the enclosed Amended Policy Declarations to a previous Policy Declaration to see "any changes in detail." In closing, the insured was again asked to contact the agent with any questions or concerns and is signed "Lonnie Jones, Jr. Your Allstate Agent".

The Amended Policy Declarations that was included in the packet with the above quoted letter lists the 02 Chrysler Town-Country.

Allstate also presented evidence that Mr. Tarrant had received and paid several bills for premiums on each Allstate policy between the time the Chrysler Town & Country van was transferred to personal policy and the accident on June 17, 2005. The bills for the commercial policy describe the vehicles covered as "01 Econoline, 98 Ram Van 1500 and 84 Ram Wag 8150". The Town & Country van is not listed as a covered vehicle on the bills associated with the commercial policy.

Mr. Tarrant claimed that he had received and paid these bills but that he had not looked at the bills. He explained that it was the practice at Blue Ribbon for his daughter and secretary to receive the bills, tear off the payment stubs from the bills, prepare a check and hand the stub and check to him for signature. She would then mail the check and stub and file the bill.

In its memorandum opinion issued orallyfrom the bench at the conclusion of the trial, the Trial Court made the following findings to support its conclusion that the Chrysler Town & Country van was covered by the personal policy and not the commercial policy:

1.  The court found that all of the witnesses were credible, honest and straight forward.
2.  Mr. Tarrant told Ms. Smith to keep the vans on the commercial policy.
3.  Ms. Smith transferred the Chrysler Town & Country van to the personal policy.
4.  The court stated that "the case may boil down to just nothing more than a misunderstanding about whatone side meantone thing aboutthe word van and the other side

honestly understood another thing about it."[2]

5.      The notice of transfer of the Chrysler Town & Country van was sent to Mr. Tarrant by Allstate and he received it, although he claims to not recall getting it.

6.      Between the mailing of the notification of transfer and the underlying accident involving Mr. Leatherwood, Allstate sent at least five bills to Mr. Tarrant, which show on their face that the Chrysler Town & Country van was insured under the personal policy and not the commercial policy.

7.      The fact that Mr. Tarrant told Ms. Smith to keep the vans on the commercial policy and that she transferred the Chrysler Town & Country van to the personal police was a "good faith" "misunderstanding" about what the meaning of "van" was.

8.      Mr. Tarrant was notified of the transfer by letter of March 23, 2005 and he should have known of the "misunderstanding" at that time.

9.      Mr. Tarrant should have known of the "misunderstanding" based on the multiple bills sent to him by Allstate that showed that the Chrysler Town & Country van was transferred to the personal policy.

10.     The court found that Mr. Tarrant ratified the "misunderstanding' because he was notified of the transfer by the March letter and the numerous bills.

The issues presented for review are:

A.      Whether the Trial Court erred when it did not reform the insurance contract

B.      Whether the Trial Court erred when it found that the insured ratified the mistake made by the insurer?

C.      Whether the Trial Court erred when it found that the insurer was not estopped from denying coverage to the insured under the commercial policy due to the insured's ratification of the mistake?

In a non-jury trial, our standard of review is *de novo. Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the trial court's legal conclusions, however, there is no presumption of correctness. *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). This Court reviews credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003). This is because trial courts, unlike appellate courts, can observe witnesses as they testify and can draw inferences from theirappearanceanddemeanor. *Hopper v.Moling,*No.W2004-02410COA-R3-CV,2005 WL 2077650 at*7,(Tenn.Ct.App.Aug.26,2005)(citing *State v.Pruett,* 788 S.W.2d 559, 561 (Tenn.

---

2

    There was no evidence at trial that there was such a misunderstanding.

1990). Thus, the trial court is in the best position to resolve factual issues that hinge on credibility and the appellate court will not re-evaluate a trial court's assessment of a witness's credibility absent clear and convincing evidence to the contrary. *Hopper*, 2005 WL 2077650 at *7.

Appellants' first issue is that the Trial Court erred when it failed to reform the contract of insurance based on a mutual mistake of the insurer and the insured. This Court recently discussed the remedy of reformation of contract in *Peatross v. Shelby County*, No. W200802385-COA-R3-CV, 2009 WL 2922797 (Tenn. Ct. App. Sep. 10, 2009) as follows:

> "[C]ourts have the power to alter the terms of a written contract where, at the time it was executed, **both** parties were operating under a **mutual mistake** of fact or law regarding a basic assumption underlying the bargain." *Sikora v. Vanderploeg,* 212 S.W.3d 277, 286 (Tenn. Ct. App.2006). Courts may also "modify the provisions of a written contract where only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud." *Id.* The goal of reformation is to "make the contract 'conform to the real intention of the parties.' " *Id.* at 287 (quoting *Lebo v. Green,* 221 Tenn. 301, 426 S.W.2d 489, 494 (Tenn.1968)). Because the law favors the validity of written agreements, the party seeking to reform the agreement must prove the mistake by clear and convincing evidence. *Id.* at 287.

*Peatross* at * 5 (emphasis added).

Allstate contends that the issues of reformation of the insurance contract and of mutual mistake are not appropriate matters for appeal as they were never raised in the trial court. A review of the record confirms Allstate's position. The issue of reformation was never raised in the complaint, the answers, Leatherwood's trial brief, the transcript of the trial or the Trial Court's judgment or memorandum opinion. For a court to reform a contract, there must be evidence of a mutual mistake of both parties or fraud on the part of one party in the making of the contract. Here there was no such evidence. In fact, Mr. Tarrant was adamant that he had told Ms. Smith to leave the Town & Country van on the commercial policy and Ms. Smith testified that Mr. Tarrant must have told her to transfer the van to the personal policy or she would not have done so. The Trial Court did not find a mutual mistake. Instead it found that Ms. Smith, perhaps by misunderstanding Mr. Tarrant's use of the word "van", had made the "good faith" mistake of transferring the Chrysler Town & Country van to the personal policy. Thus, the mistake here was one sided and not mutual. Nor was there any evidence to support a finding of fraud on the part of either party. Accordingly, the issue of reformation was not raised in the pleadings or in argument and it was not supported by the evidence. It is well established in Tennessee that issues not raised in the trial court cannot be raised for the first time on appeal. *Correll v. E.I. DuPont de Nemours & Co.,* 207 S.W.3d 751, 757 (Tenn. 2006)(citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991).

Appellants contend thatthe TrialCourterred when itheld thatMr.Tarranthad ratified Ms. Smith's mistake of transferring the Town & Country van to the personal policy. Appellee's support the Trial Court's finding of ratification by relying on *Webber v. State Farm Mutual Automobile Ins. Co.*, 49 S.W.3d 265 (Tenn. 2001) wherein the Supreme Court held that an insured had ratified his mother-in-law's selection of low uninsured motorist coverage on his policybased on agencyprinciples. However, for the holdings of *Webber* and the other ratification cases relied on by Allstate to support a finding that Mr. Tarrant ratified Ms. Smith's transfer of the van to the personal policy, there must first be a finding that an agency relationship existed between Ms. Smith and Mr. Tarrant or that Ms. Smith included the Town & Country van on the personal insurance policy for the benefit of Mr. Tarrant. A finding of an principal/agent relationship between Mr. Tarrant and Ms. Smith is statutorily precluded by Tenn. Code Ann. § 56-6-115 (b) as follows:

> An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, **as the agent of the insurer and not the insured or insured's beneficiary**. This subsection (b) shall not affect the apparent authority of an agent.

Tenn. Code Ann. § 56-6-115 (b)(emphasis added).

The purpose of § 56-6-115(b) is to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted and to protect an applicant who relies on such representations and actions of the insurer's agent. *Acuity Mut. Ins. Co. v. Frye*, 699 F. Supp.2d 975, 986 (E. D. Tenn. 2010)[3]. The statute is liberally construed in the insured's favor. *Id.* (citing *Bill Brown Construction Co., Inc. v. Glens Falls Ins. Co.,* 818 S.W.2d 1, 4 (Tenn.1991) (discussing former Tenn. Code Ann. § 56-6-147, the predecessor to Tenn. Code Ann. § 56-6-115(b)); *Ralph v. Pipkin,* 183 S.W.3d 362, 371 (Tenn. App.2005); *Industrial Life & Health Ins. Co. v. Trinkle,* 30 Tenn. App. 243, 204 S.W.2d 827 (1947)).

Tenn. Code Ann. § 56-6-102(6) provides the definition of "[i]nsurance producer" as a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance. Patricia Smith is an "insurance producer" under this statute as she is licensed under Tennessee law to sell, solicit and negotiate insurance which she does as an associate of the Lonnie Jones Insurance Agent on behalf of Allstate. According to Tenn. Code Ann. 56-6-115(b), in the context of this litigation, which arose from an application for insurance and the policy issued, Ms. Smith is the agent of Allstate and cannot be considered the agent of the insured, Mr. Tarrant or Blue Ribbon.

---

[3]

*Acuity Mut. Ins. Co. v. Frye was decided based on Tennessee law.*

Tennessee law provides, however, that a principal can ratify a contract made by a person not his agent under certain circumstances. This Court, in *Monumental Life Ins. Co. v. Puckett*, No. W2005-00083-COA-R3- CV, 2006 WL 44037 (Tenn. Ct. App. Jan.9, 2006) discussed ratification of a non-authorized contract as follows:

A fundamental principle of agency law is that "[a] principal is bound neither by contracts made by a person not his agent, nor by those of his agent beyond the scope of his actual and apparent authority, which he has not ratified and is not estopped to deny." See, e.g., *Bells Banking Co. v. Jackson Ctr., Inc*., 938 S.W.2d 421, 425 (Tenn. Ct. App.1996). Although an unauthorized contract is generally voidable by the principal, a principal who ratifies that contract is bound by its terms as if he or she had executed it originally. See 12 Williston on Contracts § 35.22 (4th ed.1999) (stating that ratification by a principal "relates back and supplies original authority to execute the contract"). Ratification of a contract occurs when one approves, adopts, or confirms a contract previously **executed "by another[,] in his stead and for his benefit, but without his authority."** *James v. Klar & Winterman,* 118 S.W.2d 625, 627 (Tex. Ct. App.1938); see also *Gay v. City of Somerville*, 878 S.W.2d 124, 127 (Tenn. Ct. App.1994) (defining "ratification" as "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do"). Simply stated, "ratification is confirmation after conduct." *Gay,* 878 S.W.2d at 127. Before ratification of an unauthorized transaction will be considered valid and binding, the principal must have " 'full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction.' " *Gough v. Insurance Co. of N. Am.*, 157 Tenn. 546, 549-50, 11 S.W.2d 887, 888 (1928) (quoting 2 C.J. § 476). Because ratification is usually a question of the principal's intent, this issue is generally regarded as a question of fact to be determined from all of the surrounding circumstances. See *Absar v. Jones*, 833 S.W.2d 86, 89 (Tenn. Ct. App.1992); *Stainback v. Junk Bros. Lumber & Mfg. Co.*, 98 Tenn. 306, 311, 39 S.W. 530, 531 (1897). However, ratification may be established "from the conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification." *Osborne Co. v. Baker*, 35 Tenn.App. 300, 305, 245 S.W.2d 419, 421 (1951). *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269-70 (Tenn.2001) (footnote omitted). "As a general rule, when a knowledge of the unauthorized transaction of the agent comes to the principal, he must with reasonable promptness disaffirm the acts of the agent, or he will be held bound thereby." *Whitfield v. May*, 19 Tenn.App. 431, 89 S.W.2d 764, 769 (1935) (citations omitted). "Silence can amount to a ratification where a party with knowledge of the transaction fails for a reasonable time to protest or dissent." *Valley Fid. Bank & Trust Co. v. Cain P'ship, Ltd.*, 738 S.W.2d 638, 640 (Tenn.Ct.App.1987)(citing *McClure v.Evartson and Mottley*,82 Tenn.495 (1884)).

*Monumental Life* at * 3.

Based on the foregoing analysis of the principles underlying ratification, the Trial Court erred when it held that Mr. Tarrant had ratified Ms. Smith's mistake of transferring the Town & Country

van to the personal policy. First, the act of transfer of the van from one policy to another policy by Ms. Smith would have to have been performed in Mr. Tarrant's "stead" and for his "benefit". There was no evidence that Ms. Smith's actions were undertaken in the place of Mr. Tarrant. The testimony from Mr. Tarrant, which the Court found to be credible, was that he told her to keep the vans on the commercial policy, thus he acted on behalf of himself. Further, Ms. Smith never testified that she acted in the place of Mr. Tarrant, she testified that she must have been instructed by him to move the van to the personal policy or she would not have done so. The evidence also does not support a finding that Ms. Smith was acting for the "benefit" of Mr. Tarrant when she transferred the van to the personal policy. The testimony of Mr. Jones and Mr. Tarrant was that it was understood between them that if Allstate could not deliver lower premiums, Mr. Tarrant would solicit bids from other insurers, thus Ms. Smith's actions in this transaction were designed to lower Mr. Tarrant's premiums so that Allstate and the Lonnie Jones Agency could keep his business. Therefore, Ms. Smith's transfer of the van without Mr. Tarrant's agreement was not subject to ratification by Mr. Tarrant.

Appellee relies on *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265 (Tenn. 2001) to support its contention that Mr. Tarrant had ratified Ms. Smith's mistaken transfer of the van to the personal policy. Appellee's reliance on *Webber*, however is misplaced because of one important difference. The facts of Webber are as follows: In July 1986, Ms. Brenda Southard applied to have her daughter's then current automobile insurance policy reissued under her daughter's married name. At the same time, Ms. Southard requested coverage forherson-in-law,Randal Webber's automobile,which was previouslyuninsured, in amounts identical to her daughter's policy. Ms. Southard requested the statutoryminimum amounts of UM coverage on both policies. Thus, Ms. Southard applied for insurance for Mr. Webber's vehicle for his benefit. These policies remained unaltered since 1986. *Id.* at 268. In 1996, Mr. Webber was involved in an automobile accident with an uninsured motorist and he made a claim under the minimum coverage limits of his UM policy, however he requested the standard coverage limits, arguing that he did not authorized his mother-in-law to get minimum limits and was not aware that she had done so. *Id.* at 270. The Supreme Court noted that "[r]atification of a contract occurs when one approves, adopts, or confirms a contract previously executed "by another [ ] in his **stead and for his benefit**, but without his authority." *Id.* (emphasis added). In *Webber* the facts were clear that Ms. Southard had obtained the policyof insurance for her uninsured son-in-law in his stead and for his benefit. The Supreme Court held that irrespective of whether Ms. Southard was authorized by the plaintiff to apply for automobile insurance **on his behalf**, the plaintiff, by bringing a suit to obtain benefits under this policy, has ratified the contract with the defendant as a matter of law. *Id.* at 272. Thus, *Webber* is distinguished from the instant case, as the contract of insurance was undertaken by Ms. Southard in the place of Mr. Webber doing so for himself and she did so for his benefit. Ms. Smith's actions were not in the "stead" of Mr. Tarrant nor were they for his benefit.

The Trial Court's finding of ratification was error and is reversed.

Appellants' contend that the Trial Court erred when it did not find that Allstate was estopped

-10

from denying coverage under the commercial policy. Tennessee law is clear that an insurance company cannot take advantage of a situation brought by its own agent's mistake in writing insurance policies. *Henry v. Southern Fire & Cas. Co.*, 46 Tenn. App. 335, 360, 330 S.W.2d 18 (Tenn. App.1958). The *Henry* court stated: " [i]n an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal." *Id*. at 30. However, appellants have ignored the fact that Allstate never denied coverage to the insured, thus the Trial Court could not have ruled that Allstate be estopped from denying coverage. Allstate's position is that the Town & Country van was insured by the personal policy and that the insureds were due coverage up to the limits of that policy. Appellants' reliance on the doctrine of estoppel is, accordingly misplaced.

This Court has noted that "it is a universal general rule that an agent or broker of insurance who,with a view to compensation forhis services,undertakes to procure insurance for another, and unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom." *Ralph v. Pipkin*, 183 S.W.3d 362, 371 (Tenn. Ct. App. 2005)(citing *Massengale v. Hicks,* 639 S.W.2d 659, 660 (Tenn. Ct. App.1982)). As discussed, the Tennessee Code, moreover, provides that an insurance agent who solicits or negotiates an application for insurance shall be regarded as the agent of the insurer. Tenn. Code Ann. § 56-6-115(b)(2004 Supp.). This statute has been liberally construed in favor of the insured, moreover, in order to "prevent the insurance company from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions." *Ralph v. Pipkin* at 371 (citing *Bill Brown Const. v. Glens Falls Ins.,* 818 S.W.2d 1, 4 (Tenn.1991) (quoting 15 Tenn. Jurisprudence, *Insurance,* § 9 at 180-81(1984)(quoting *Industrial Life & Health Ins. Co. v. Trinkle,* 30 Tenn.App. 243, 204 S.W.2d 827 (1947))).

The preponderance of the evidence is that Mr. Tarrant told Ms. Smith to leave all of the vans on the commercial policy. The evidence also preponderates in favor of a finding that Ms. Smith, by mistake or negligence, transferred the Chrysler Town & Country van to the personal policy. Her failure to carry out the instructions of the insured to keep the van on the commercial policy resulted in a decrease in the amount of insurance funds available to pay a judgment in Leatherwood tort action. The difference in coverage between the personal policy and the commercial policy was $400,000.00. Allstate is responsible for the

actions or failure to act of Ms. Smith. But for the actions of Ms. Smith, the insured would have insurance coverage as provided in the commercial policy to apply to the Leatherwood suit.

Further, the fact that Mr. Tarrant received notice of the transfer of the Town & Country van and that he paid invoices that indicated that the Town & Country van was covered by the personal policy cannot absolve Allstate from liability. The Court in *Allstate Ins. Co. v. Fox*, No. 134, 1990 WL 8058 (Tenn. App. Feb/ 6, 1990) stated that the fact that a purchaser of an insurance policy did not read the liability policy tendered to him did not preclude a recovery by the insured. The Court noted that courts will take judicial notice of the fact that it is customary for insureds to accept policies and keep them without reading them. The Court went on to state that it would take judicial

notice of the fact that it is customary for insureds to accept insurance policies, read them, keep them, and not understand the policy and the coverage they afford. Generally people who purchase an insurance policy put their faith in the agents to sell them the desired coverage. *Fox* at *3 (citing *Henry v. Southern Fire & Cas. Co.,* 330 S.W.2d 18, 32 - 33 (Tenn. App. 1958)). As in *Fox* this Court takes judicial notice that insureds often do not read the policies provided to them by their insurers. In fact, Mr. Tarrant testified that he trusted the Lonnie Jones agency to do what he asked as he had dealt with that agency for almost twenty years.

Taking Mr. Tarrant's testimony as true, as we must, as he was found credible by the Trial Court, the agent of Allstate failed to follow his directions as to the insurance coverage on the van at issue. The evidence preponderates that Allstate, through its agent, failed to insure the van as directed by the insured.

Accordingly, the Judgment of the Trial Court is reversed and the case dismissed without prejudice to any of the parties, with the cost of the appeal taxed to Allstate Insurance Company.

_____
HERSCHEL PICKENS FRANKS, P.J.